OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas J.
Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West Publishing
Company for the final versions of these opinions.  The advance
sheets to Ohio St.3d will also contain the volume and page numbers
where the opinions will be found in the bound volumes of the Ohio
Official Reports.

Sanderson, Appellant, v. Ohio Edison Company et al.; Ohio Farmers
Insurance Company, Appellee.
[Cite as Sanderson v. Ohio Edison Co.(1994),     Ohio St. 3d
.]
Insurance -- Absolute duty of insurer to defend exists, when --
     Insurer voluntarily forgoes right to control litigation and
     insured may make reasonable settlement without prejudice to
     insured's rights under insurance policy, when -- Determining
     whether an injury arose from use of an automobile --
     Automobile not furnished for regular use of an insured, when.

1.  An insurance policy which states that the insurer is obligated
     to defend in any action seeking damages payable under the
     policy against the insured, even where the allegations are
     groundless, false or fraudulent, imposes an absolute duty
     upon the insurer to assume the defense of the action where
     the complaint states a claim which is partially or arguably
     within policy coverage.
2.  By unjustifiably refusing to defend an action, the insurer
     voluntarily forgoes the right to control the litigation and
     the insured may make a reasonable settlement without
     prejudice to the insured's rights under the insurance policy.
3.  In determining whether an injury arose from the use of an auto-
     mobile, the relevant inquiry is whether the chain of events
     resulting in the accident was unbroken by the intervention of
     any event unrelated to the use of the vehicle.  (Kish v.
     Cent. Natl. Ins. Group of Omaha [1981], 67 Ohio St.2d 41, 2
     O.O. 3d 26, 424 N.E.2d 288, followed.)
4.  An automobile is not furnished for the regular use of an
     insured where the insured has only occasional possession of
     the automobile, which does not exceed ten occasions in one
     year.

(No. 93-873 -- Submitted April 5, 1994 -- Decided July 20,
1994.)

Appeal from the Court of Appeals for Ottawa County, No.
91-OT-056.

On February 13, 1982, plaintiff-appellant, Johnnie Sanderson,
was injured when she was hit by a truck started by Dale Allen, the
ten-year-old son of Judith and Thomas Allen.  The truck was owned

by defendant-appellee, Ohio Edison Company, the employer of Thomas Allen, who had driven it to a dinner party while accompanied by appellant and Dale Allen.  Mr. Allen was in possession of the vehicle because he was acting as a substitute foreman that weekend.  The injury occurred when Dale, who was unfamiliar with a standard transmission, started the truck at the same time appellant walked in front of it.  The vehicle lurched forward, pinning appellant between the truck and another parked vehicle.

Appellant filed an action against Dale Allen and Judith Allen, who impleaded Ohio Edison and Thomas Allen, Judith's former husband.  Appellant alleged in her amended complaint that Dale Allen had negligently operated the truck, that his parents had negligently encouraged and taught him to operate motor vehicles, and that her injuries were the direct and proximate consequence of the Allens' joint negligence.

The Allens were insured by separate automobile liability insurance policies issued by appellee, Ohio Farmers Insurance Company.  The policies are identical in coverage terms except for the monetary limits of liability.

The insurer was given notice of the suit, but took the position that coverage was not available under the policies, and therefore refused to defend the suit or participate in any settlement negotiations.  The Allens settled the claim, on the day set for trial, by admitting liability and allowing the court to determine the amount of damages.  In return, plaintiff agreed not to seek collection from the Allens but, rather, to seek satisfaction of the judgment from insurance proceeds.

The Ottawa County Court of Common Pleas found the Allens negligent and awarded damages in the amount of $79,000 by judgment entry dated September 18, 1985.

Plaintiff subsequently filed a supplemental complaint, pursuant to R.C. 3929.06, naming Ohio Edison and three insurers, including Ohio Farmers, as defendants.  The other insurers, homeowner insurers, were later dismissed from the action on the basis of policy language that excluded coverage for bodily injury arising out of the ownership, maintenance, or use of a motor vehicle, leaving only Ohio Farmers as an insurer in the action.

On May 23, 1988, the trial court granted plaintiff's motion for summary judgment, finding that coverage existed under the insurer's policies.  The court of appeals reversed and remanded, concluding that genuine issues of material fact existed on the issue of whether the vehicle was available for Thomas Allen's regular use, whether the truck was a private passenger automobile, and whether Dale Allen had permission of the owner to start the truck. Sanderson v. Ohio Farmers Ins. Co. (June 2, 1989), Ottawa App. No. OT-88-31, unreported.

The trial court found, on remand, that the policies provided coverage and ordered the insurer to pay $79,000, plus interest.  On appeal, the judgment was reversed on the sole ground that, by not seeking the assent and participation of the insurer before entering into the settlement agreement, an express condition contained in the policies, the Allens had breached the contract and eliminated their right to coverage under the policies, thereby precluding plaintiff from recovery.  The other assignments of error were deemed moot and were not addressed, under authority of App.R. 12(A)(1)(c).

The policies contain the following coverage provision

regarding the insurer's duty to defend:

"[T]he company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of the policy, even if any of the allegations of the suit are groundless, false or fraudulent***."

The dissenting judge in the court of appeals opined that the insurer had materially breached the contract by refusing to honor its duty to defend the Allens and, consequently, could not invoke those policy conditions relied upon by the majority to preclude plaintiff from recovery on the judgment.

This cause is now before this court upon the allowance of a motion to certify the record.

Murray & Murray, W. Patrick Murray and Steven C. Bechtel, for appellant.

Jones & Bahret Co., L.P.A., Robert J. Bahret and Keith J. Watkins, for appellee.

Nader, J.    Plaintiff argues that the insurer breached its contractual duty to defend, that this breach effected a waiver of the conditions relied upon by the insurer, and that the court of appeals erred in its conclusion that the Allens were required to file a declaratory judgment action in response to the insurer's refusal to defend.  The insurer contends, in its first and second propositions of law, that its duty to defend was not automatically invoked by the plaintiff's allegations of negligence stated in her pleadings, and that its incorrect determination not to defend did not result in a waiver of the insureds' obligation to comply with all the conditions contained in the policies.  The insurer asserts, in its third proposition of law, that, absent an assignment or other contractual right, a judgment creditor does not have standing in a supplemental proceeding to claim that the insurer waived policy conditions by failing to defend its insureds in the underlying action.  On cross-assignments of error, the insurer argues in its fourth and fifth propositions of laws that, even if this court concludes that plaintiff's arguments are meritorious, the negligence agreed upon in the underlying action is not covered under the policies, and that the truck in issue is not a covered, "non-owned" vehicle within the terms of the policies.  For the reasons set forth below, this court concludes that the court of appeals erred in reversing the judgment of the trial court.

Generally, an insurer in a supplemental proceeding under R.C. 3929.06 has available to it any defense arising from the insured's failure, in the underlying action, to satisfy conditions in the insurance policy which are a prerequisite to indemnification.  See Bennett v. Swift & Co. (1959), 170 Ohio St. 168, 10 O.O.2d 109, 163 N.E.2d 362; Miller v. Jones (1942), 140 Ohio St. 408, 24 O.O. 415, 45 N.E.2d 106.  In the present case, the policies contain the following condition:

"No action shall lie against the company *** until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

The parties agreed that the insureds did not comply with this condition.

In Willoughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, this court held in the

syllabus:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

The policies in issue unambiguously state that the insurer has the obligation to defend any action against the insured seeking damages payable under the policies "even if any of the allegations of the suit are groundless, false or fraudulent." This language imposes upon the insurer the absolute duty to assume the defense of the action where the underlying tort complaint states a claim which is potentially or arguably within the policy coverage. Id. Cf. Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, paragraph two of the syllabus. It is clear that the allegation set forth in plaintiff's complaint presented a claim which was potentially or arguably within the coverage of the policies.

"The duty to defend is of great importance to both the insured and the insurer." Gen. Acc. Ins. Co. v. Ins. Co. of N. Am. (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266, 271. Thus, the insurer's failure to honor that obligation constitutes a material breach of the contract. This material breach relieves the insured of the duty to seek the insurer's assent to and participation in a proposed settlement.

In Hartford Acc. & Indemn. Co. v. Randall (1932), 125 Ohio St. 581, 183 N.E. 433, at paragraph three of the syllabus, this court held the following with respect to a provision requiring notice of suit:

"Where a policy of indemnity casualty insurance obligates the insurance company to defend, in the name and on behalf of the assured, any suit against the assured within the terms of the policy, and as a condition thereto requires that immediate notice of such be given to the company, such notice is waived if, prior to such suit, the company by its authorized agent disclaims liability to indemnify and declares its intention not to defend the suit for that reason."

Similarly, where an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations.[1]

Also in accord with this decision is Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co. (1952), 157 Ohio St. 385, 47 O.O. 270, 105 N.E.2d 568, in which this court held that a primary insurer violates its duty to defend at its own peril, and that its breach of that duty will make it liable for anything the secondary insurer had to pay in a good-faith settlement of the claim as a result of the primary insurer's breach of duty. The opinion states that the primary insurer "could not escape ultimate liability merely by denying coverage and refusing to defend the

action. It cannot be immunized from payment by its own breach of contract." Id. at 392, 47 O.O. at 273, 105 N.E.2d at 571.

Fairness and justice demand that an insurer that breaches its duty to defend an insured be estopped from asserting, as a defense in a supplemental proceeding under R.C. 3929.06, that the insured failed to obtain the consent of the insurer to settle the action. Neither the insured nor the injured party is required to perform conditions in a policy made vain and useless by reason of the insurer's prior breach. See Hartford Acc. & Indemn. Co., 125 Ohio St. at 586, 183 N.E. at 435, citing Bachman v. Independence Indemn. Co. (1931), 112 Cal. App. 465, 297 P. 110, rehearing denied (1931), 298 P. 57.

Moreover, contrary to the insurer's argument in its third proposition of law, not raised in the court of appeals, the judgment creditor has standing in the supplemental proceeding to assert that the insurer waived policy conditions by failing to defend its insured in the underlying action, even in the absence of a written assignment or other contractual right. R.C. 3929.06 confers a statutory right of subrogation upon any judgment creditor authorized by that provision to file a supplemental petition. Hartford Acc. & Indemn. Co., 125 Ohio St. at 586, 183 N.E. at 435.

Finally, we conclude that the court of appeals erred in imposing a duty upon an insured to file a declaratory judgment action in response to an insurer's refusal to defend an action. While a declaratory judgment action is a proper means by which to expeditiously resolve the issue of coverage, it is also available to the insurer and any injured party. Broz v. Winland (1994), 68 Ohio St.3d 521, 524-525, 629 N.E.2d 395, 398. Moreover, the issue may be adequately adjudicated in the supplemental proceeding. We discern no justification for requiring that this remedy be pursued by any party.

In the insurer's fourth proposition of law, it argues that the lower court erred in failing to reverse the trial court's holding that the accident arose from the use of an insured vehicle. We disagree.

The insurer contends that Judith and Thomas Allen's negligence in teaching their son to operate motor vehicles and in failing to supervise him did not arise out of the use of the particular insured vehicle and therefore is not covered by the insurance policy. This argument in inapposite. It is not the negligence of the insured which is covered by the insurance contracts. Instead, the insurance policies provide that an insured will be indemnified for damages arising from use of a covered automobile, which damages were proximately caused by the negligence of the insured. Our review of the facts in light of Ohio case law indicates that appellant's injuries did arise from such use. In Kish v. Cent. Natl. Ins. Group of Omaha (1981), 67 Ohio St.2d 41, 21 O.O. 3d 26, 424 N.E.2d 288, a claim was made against the decedent's wife's automobile insurance policy. The decedent was driving his wife's car when he was truck from behind by another vehicle. Upon existing the car to confer with the driver, the decedent saw the other driver emerge with a shotgun, and attempted to get back into his car, but was fatally shot before he could do so. This court held, in determining whether the death arose out of the use of the car, that the relevant inquiry is "whether the chain of events resulting in the accident

was unbroken by the intervention of any event unrelated to the use of the vehicle." Id. at 50, 21 O.O. 3d at 32, 424 N.E.2d at 294. Thus, we determined that "the intentional, criminal act of the murderer was an intervening cause of the injury unrelated to the use of the vehicle" and therefore, that "'the death resulted from an act wholly disassociated from and independent of the use of the vehicle as such.'"  Id.

In the instant case, appellant's injury was the result of a chain of events which was unbroken by the intervention of any event unrelated to the use of the vehicle.  Judith and Thomas Allen had negligently instructed and encouraged their minor son to start automobiles in their possession.  Thomas Allen negligently allowed his minor son to have access to the keys of a truck with a manual transmission, which the son did not know how to operate, and negligently permitted him to operate this vehicle.  Appellant was injured as a direct result of this chain of events.  There was no intervening act independent of the use of the vehicle.

Additionally, in Hall v. United States Fid. & Guar. Co. (1957), 107 Ohio App. 13, 7 O.O. 2d 344, 155 N.E.2d 462, the claimant was injured when he was squeezed between two cars while he and his employer, who owned both vehicles, were attempting to start one by towing it with the other.  The claimant brought suit against his employer to recover for the injuries he sustained as a result of his employer's negligence in allowing the operational car, which the employer was driving, to slip backward.  The insurance company refused to assume the employer's defense, arguing that the injury was the result of the use of the disabled car.  The court held that because the claimant and his employer were attempting to start the car when the injury occurred, there was a "clear [and] proximate connection between the ownership and use of the [disabled car] *** and [claimant's] injuries.  Id. at 17, 7 O.O. 2d at 345, 155 N.E. 2d at 465.

The facts of the instant case are similar to those in Hall. In the instant case, appellant was pinned between two cars when Judith and Thomas Allen's minor son attempted to start a vehicle as appellant, Thomas Allen, and his minor son were leaving a party.  The attempt to start the vehicle clearly constituted use of the vehicle, and this use of the vehicle was the direct cause of appellant's injuries.  As a result, the trial court did not err in finding that appellant's injuries arose from the use of an insured vehicle, and the insurer's first cross-assignment of error is meritless.

In its fifth proposition of law, the insurer argues that the lower court erred in failing to reverse the trial court's finding that the Ohio Edison truck involved in the accident was not furnished for the regular use of Thomas Allen.  We disagree.

The insurance contracts provide coverage for liability for bodily injury "arising out of the ownership, maintenance or use of [an] owned automobile or any non-owned automobile."  A "non-owned automobile" is defined by the insurance contracts as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."  It is uncontroverted that the insured, Thomas Allen, did not own the automobile in question. Thus, coverage is required only if the automobile was not furnished for Thomas Allen's regular use.

The meaning of the words "regular use" has been held to be

use that is frequent, steady, constant or systematic. Ohio Cas. Ins. Co. v. Travelers Indemn. Co. (1975), 42 Ohio St. 2d 94, 71 O.O. 2d 69, 326 N.E.2d 263; Withrow v. Liberty Mut. Fire Ins. Co. (1991), 72 Ohio App.3d 592, 595 N.E.2d 529; Motorists Mut. Ins. Co. v. Sandford (1966), 8 Ohio App.2d 259, 37 O.O.2d 249, 221 N.E.2d 596. The insurer contends that Thomas Allen's use of the Ohio Edison Truck is consistent with this definition of "regular use." However, our review of the record leads to the opposite conclusion.

The insurer argues that Thomas Allen testified that he regularly used the Ohio Edison truck as a personal vehicle, in contravention of Ohio Edison policy. However, Thomas Allen testified not that he regularly used the truck as a personal vehicle, but that he used the truck for personal purposes when he had it. The insurer further argues that appellant testified that Thomas Allen used the truck as a personal vehicle on many occasions. This testimony, too, has been misconstrued by the insurer. Appellant testified that Thomas Allen used the Ohio Edison truck for personal purposes on one prior occasion, to take appellant to an Alcoholics Anonymous meeting. In fact, appellant testified that she could not recall any other occasion on which she had ridden in the Ohio Edison truck.

Additionally, Thomas Allen took the Ohio Edison truck home only when he was acting as temporary foreman. A temporary foreman was designated by Ohio Edison only when the regular foreman was unable to work. Thomas Allen testified that he had possession of the Ohio Edison truck only eight to ten times over the course of one year. We do not believe that this occasional possession of the Ohio Edison truck constitutes frequent, steady, constant or systematic use. We hold that an automobile is not furnished for the regular use of an insured where the insured has only occasional possession of the automobile, which does not exceed ten occasions in one year.

The insurer cites our decision in Kenney v. Employer's Liab. Assur. Corp. (1966), 5 Ohio St.2d 131, 34 O.O.2d 259, 214 N.E.2d 219, in support of the contention that Thomas Allen's use of the Ohio Edison truck constituted regular use. However, the facts of that case are clearly distinguishable from the case sub judice. In Kenney, a city police officer sustained bodily injury while using a police cruiser. The police officer was assigned to work in a police cruiser one hundred twenty-two of one hundred sixty-four working days. Based on these facts, this court held that the police cruiser was furnished for the police officer's regular use. In the instant case, Thomas Allen had possession of the Ohio Edison truck only sporadically, when he was called upon to act as foreman in the absence of the regular foreman. Thomas Allen's possession of the truck did not exceed ten occasions in one year, as opposed to the one hundred twenty-two of one hundred sixty-four working days in Kenney. Thus, the Kenney case is distinguishable on its facts, and does not require a holding that Thomas Allen regularly used the Ohio Edison truck.

The insurer's argument that the lower court erred in failing to reverse the trial court's finding that the Ohio Edison truck was not furnished for Thomas Allen's regular use is meritless.

For the foregoing reasons, we conclude that the trial court correctly entered judgment in favor of appellant. The judgment of the court of appeals is hereby reversed and the judgment of the

court of common pleas is reinstated.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, F.E. Sweeney and Pfeifer, JJ., concur.

Robert A. Nader, J., of the Eleventh Appellate District, sitting for Resnick, J.

FOOTNOTE:

1 Appellee produced no evidence in the supplemental proceeding below that the admission of liability was collusive or fraudulent.