[Cite as *Hastings Mut. Ins. Co. v. Village Communities Real Estate, Inc.*, 2014-Ohio-2916.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hastings Mutual Insurance Company, | : | |
| Plaintiff-Appellee, | : | No. 14AP-35 |
| | | (C.P.C. No. 12-CV-1950) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Village Communities Real Estate, Inc., et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on June 30, 2014

*Stark & Knoll Co., L.P.A.*, and *Christopher A. Tipping*, for appellee.

*Thompson Hine LLP*, *Gabe J. Roehrenbeck*, *Scott A. Campbell*, and *Todd M. Seaman*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendants-appellants, Village Communities Real Estate, Inc., Traditions at Polaris, LLC, and Village Communities Corporation, appeal from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of plaintiff-appellee, Hastings Mutual Insurance Company. Because the trial court did not err in concluding all of the claims occurred and were known prior to the policy dates and are therefore excluded from coverage, we affirm.

## I. Facts and Procedural History

{¶ 2} This action stems from appellee's complaint seeking a declaratory judgment that it has no duty to defend or indemnify appellants in lawsuits (the "underlying complaints") filed against appellants by two homeowners, Karen Macrina and Barb Gifford. Because the underlying complaints are nearly identical, the trial court

consolidated them into a single action. The underlying complaints assert claims for breach of express written construction sales contract, negligent misrepresentation, misrepresentation and civil fraud/concealment, negligent construction, breach of express warranty, and violations of Ohio's Consumer Sales Practices Act ("CSPA"). Both Gifford and Macrina assert they separately entered into a real estate construction and sale contract with Traditions at Polaris, LLC in 2006 for the construction, purchase and sale of a home, and Village Communities provided the homeowners' limited warranty for each home. Subsequent to taking occupancy, both Gifford and Macrina discovered water infiltration and related problems in the basements of their homes and timely reported those issues to appellants. Gifford's and Macrina's homes are side-by-side and share a common foundation.

{¶ 3} After Gifford and Macrina purchased their homes, Village Communities Real Estate, Inc. obtained two liability insurance policies from appellee. The first, the Hastings Contractors Package Policy of Insurance number CPP 9792143 (the "Contractors Policy") was effective March 1, 2010 to March 1, 2011. The second, the Commercial Umbrella Policy of Insurance number ULC 9774539 (the "Umbrella Policy") was effective March 1, 2010 and cancelled on October 1, 2010. Both policies provide coverage for liability arising out of bodily injury, property damage, and personal and advertising injury. Both policies specifically exclude from coverage damages the insured is obligated to pay as a result of liability assumed in a contract or agreement. Additionally, both policies provide appellee has a duty to defend and indemnify the insured only if the property damage alleged is caused by an "occurrence" within the coverage territory during the policy period and if no insured or authorized employee knew the damage occurred prior to the policy period. Both policies also exclude from coverage any property damage stemming from incorrect performance of the insured's work on the property.

{¶ 4} After Gifford and Macrina instituted the underlying complaints, appellants provided notice to appellee of suit. On November 23, 2010, appellee assumed a defense of the underlying complaints and issued reservation of rights letters to Village Communities Real Estate, Inc., its named insured, indicating appellee was reserving all rights and policy defenses available to it and indicating the subject insurance coverage was or may be excluded for various reasons.

{¶ 5} On February 14, 2012, appellee filed its complaint seeking a declaratory judgment asserting the claims raised in the underlying complaints either do not give rise to coverage or are otherwise excluded from coverage. On September 27, 2012, appellee moved for summary judgment on all claims raised in its declaratory judgment complaint. Appellants responded with a memorandum in opposition on October 29, 2012, and appellee filed a reply brief thereafter.

{¶ 6} In a decision and entry dated December 16, 2013, the trial court granted appellee's motion for summary judgment, concluding that, even when viewing the facts in a light most favorable to appellants, the claims in the underlying complaint are not covered under the policies appellee issued to appellants. The trial court determined the claims for breach of contract, breach of warranty, negligent misrepresentation, and negligent construction do not constitute "property damage" or an "occurrence" under the policies. The trial court next determined the claims for civil fraud and violation of the CSPA are excluded because they allege intentional conduct on the part of appellants which is specifically excluded from coverage. Finally, the trial court concluded that even if the claims did constitute an "occurrence" within the meaning of the policies, all the claims occurred and were known to appellants prior to the policy dates and are thus excluded from coverage on that basis as well. Appellants timely appeal.

## II. Assignments of Error

{¶ 7} Appellants assign the following three assignments of error for our review:

> [1.] The trial court erred in ruling that "claims for fraud and violations of the Ohio's Consumer Sales Practices Act are excluded from coverage as intentional acts."

> [2.] The trial court erred in ruling that "claims for breach of contract, breach of express warranty, negligent misrepresentation, and negligent construction are excluded from coverage."

> [3.] The trial court erred in ruling that "[t]he claims occurred prior to the policy dates and are excluded from coverage."

For ease of discussion, we address appellants' assignments of error out of order.

## III. Standard of Review

{¶ 8}  An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994).  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 9}  Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. Third Assignment of Error – Timing of Claims

{¶ 10}  In their third assignment of error, appellants argue the trial court erred in determining the claims are excluded from coverage under the policies because they occurred prior to the policy dates.  Appellants suggest the critical inquiry is not whether appellee will ultimately be liable for coverage but whether appellee has a duty to defend against the claims.  While we agree with appellants' characterization of the issue, summary judgment was still appropriate.

{¶ 11} An insurer's duty to defend is both broader than and distinct from its duty to indemnify.  *Cardiothoracic & Vascular Surgical Specialists, Inc. v. Travelers Indemn.*

*Co.*, 10th Dist. No. 05AP-1355, 2006-Ohio-6947, ¶ 20, citing *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382 (1945), paragraph one of the syllabus; *W. Lyman Case & Co. v. Natl. City Corp.*, 76 Ohio St.3d 345, 347 (1996). An insurer's duty to defend an action is absolute when the complaint contains an allegation in any one of its claims that is arguably within the scope of coverage of the insurance policy. *Cardiothoracic & Vascular Surgical Specialists* at ¶ 20, citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582 (1994), paragraph one of the syllabus. Once it is determined an insurer must defend one claim within a complaint, it must defend the insured on all other claims within the complaint "even if they bear no relation to the policy coverage." *Cardiothoracic & Vascular Surgical Specialists* at ¶ 20, citing *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 80 (1986). *See also Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 13.

{¶ 12} Conversely, however, an insurer has no duty to defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. *Cardiothoracic & Vascular Surgical Specialists* at ¶ 21, citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113 (1987). The action's ultimate outcome or the insurer's ultimate liability does not determine the duty to defend an action. *Id.*, citing *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph two of the syllabus. "There is no duty to defend 'if there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage.' " *Id.*, quoting *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605 (1999). Thus, if we are able to discern that there is no possibility of coverage under appellants' policies it obtained from appellee, then appellee will have no duty to defend appellants in the underlying complaints.

{¶ 13} Here, to determine whether there is a possibility of coverage under the policies, we look to the plain language of the policies themselves. Generally, courts interpret insurance policies in accordance with the same rules applied in interpreting other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). The interpretation and construction of written contracts is a question of law subject to de novo review on appeal. *State v. Fed. Ins. Co.*, 10th Dist. No.

04AP-1350, 2005-Ohio-6807, ¶ 22, citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998).

{¶ 14} "When provisions of an insurance policy are reasonably susceptible to more than one interpretation, we must construe them strictly against the insurer" and "adopt any reasonable construction that results in coverage for the insured." *State Farm Mut. Auto Ins. Co. v. Gourley*, 10th Dist. No. 12AP-200, 2012-Ohio-4909, ¶ 12, citing *Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St.3d 34, 38 (1987), and *Emps. Reinsurance Corp. v. Worthington Custom Plastics, Inc.*, 109 Ohio App.3d 550, 558-59 (10th Dist.1996).

{¶ 15} In determining the meaning of a contract, we give words and phrases their plain and ordinary meaning "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus, superseded by statute on other grounds; *Hedmond v. Admiral Ins. Co.*, 10th Dist. No. 02AP-910, 2003-Ohio-4138, ¶ 33.  "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

{¶ 16} Both policies state, in relevant part:

b. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured * * * and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Commercial General Liability Form Section I(A)(1)(b).) This clause is commonly known as a "loss in progress" or "known risk" clause.  *See, e.g., Ohio Cas. Ins. Co. v. Mansfield Plumbing Prods., LLC*, 5th Dist. No. 2011-COA-009, 2011-Ohio-4523, ¶ 10.

{¶ 17} Appellee asserts that, based on the plain language of the policies, if an insured or its employees knew that bodily injury or property damage had occurred prior to the policy period, then the continuation, change or resumption of such bodily injury or property damage during the policy period is deemed to have been known by the insured prior to the policy period.  Thus, appellee argues, all the claims in the underlying complaints are indisputably excluded from coverage because the damage they allege occurred prior to the policy period and because appellants had knowledge of the damage prior to the policy period.  We agree with appellee that there is no ambiguity in the language of the policies and that, based on the plain language, there will be no coverage when the damage that occurred during the policy period is a continuation of damage that occurred prior to the policy period.  *Id.* at ¶ 20 (construing "loss in progress" clause to mean that even if a court were to find each damage claim of a failing hush tube to be a separate occurrence, where the damages all arose from the initial use of defective resin by the plumping parts manufacturer and the plumping parts manufacturer knew prior to purchasing the insurance policies that the hush tubes were failing, then the failing of the hush tubes during the policy period "is a continuation of property damage and is excluded by the loss in progress provision").  Thus, we must look to the underlying complaints to determine whether they allege any set of facts which arguably fall within coverage.

{¶ 18} The Gifford complaint alleges Gifford first noticed water infiltration and related problems with her basement walls on November 6, 2006 and that she timely reported those problems to appellants.  (Gifford Complaint, 2.)  Gifford further alleged appellants attempted to repair the problems but were unsuccessful.  The Macrina complaint similarly alleges Macrina first noticed water-related problems in her basement in October 2006 and February 2007, and that appellants unsuccessfully attempted to remedy those problems.  (Macrina Complaint, 2.)  Both Gifford and Macrina allege appellants knew of and attempted to repair the problems, so we must determine when appellants indisputably knew of the damage to determine whether the complaints allege

damage that, based on the plain language of the policies, would be deemed to have occurred prior to the policy periods.

{¶ 19} "In determining whether a complaint states a claim that is potentially or arguably within policy coverage thereby triggering the insurer's duty to defend, we may consider matters 'outside the four corners of the pleadings.' " *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc.*, 141 Ohio App.3d 269, 278 (10th Dist.2001), quoting *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984).  In support of its motion for summary judgment, appellee relied on the deposition testimony of Gifford and Macrina to establish when they reported the water-related issues to appellants.  Macrina stated she discovered the issues in February 2007, agents of appellants cut into her basement wall in November 2007, and a representative of appellants came to inspect the attempted repairs in 2008.  (Macrina Depo., 35, 74.) Macrina further stated the repairs were unsuccessful and the issues with water infiltration in her basement continued unabated up until the time she filed her complaint.  Gifford stated she discovered the backup of sewer and drains in her basement on July 3, 2006. (Gifford Depo., 113.)  Representatives of appellants attempted repairs multiple times, and Gifford specifically mentioned appellants' representatives performing work in an effort to fix the problems in spring 2007, December 2008, and March 2009.  (Gifford Depo., 89, 92.)  Appellants did not refute these dates with any Civ.R. 56 evidence or deny that they had actual knowledge of the water and plumbing issues on the dates Gifford and Macrina referred to in their depositions.  Thus, it is undisputed that the damage Gifford and Macrina described in their complaints began prior to the policy periods and that appellants knew of that damage prior to the policy periods.  Based on the plain language of the policies in section I(A)(1)(b) of each policy, all of the damage alleged in the complaint falls outside of the policy coverage.

{¶ 20} Appellants insist it is enough that some harm occurred during the policy period to invoke coverage regardless of whether that harm is a continuation of harm that occurred outside the policy period.  This interpretation, however, defies the plain language of the policies.  We are mindful that in examining the underlying complaint, we must not " ' "stretch the allegations beyond reason to impose a duty on the insurer.  To do so would effectively impose an absolute duty upon the insurer to provide a defense to the

insured regardless of the cause of action stated in the complaint." ' " *Cardiothoracic & Vascular Surgical Specialists* at ¶ 22, quoting *Natl. Dairy Herd Improvement Assn.* at 279, quoting *Leland Electrosystems, Inc. v. Travelers Ins. Co.*, 2d Dist. No. 8580 (July 10, 1984).

{¶ 21} Here, it is undisputed that the damage alleged in the underlying complaints began before the policy period and appellants knew of the damage before the policy period. Based on the plain language of the policies, these claims do not fall within policy coverage, as the policies make it clear that a continuation or resumption of this same damage is not sufficient to bring the claims within policy coverage. *See Mansfield Plumbing Prods.* at ¶ 20. Accordingly, the trial court did not err in concluding appellee had no duty to defend the underlying complaints where all of the claims alleged are indisputably excluded from policy coverage. We overrule appellants' third assignment of error.

## V. First and Second Assignments of Error – Intentional Acts, Occurrence, and Damages

{¶ 22} Because our resolution of appellants' third assignment of error is dispositive and renders moot appellants' first and second assignments of error, we need not address them.

## VI. Disposition

{¶ 23} Based on the forgoing reasons, the trial court did not err in granting appellee's motion for summary judgment. Having overruled appellants' third assignment of error and rendered moot appellants' first and second assignments of error, we affirm the decision and entry of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR and DORRIAN, JJ., concur.

——————————